**Clifton HAIRSTON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 18760.**

United States Court of Appeals
District of Columbia Circuit.

Feb. 2, 1965.

Bazelon, Chief Judge, dissented.

Mr. Ferdinand J. Mack (appointed by this court), Washington, D. C., for appellant.

Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Martin R.

Hoffmann, Asst. U. S. Attys., were on the pleadings for appellee.

Before BAZELON, Chief Judge, WRIGHT and McGOWAN, Circuit Judges, in Chambers.

ORDER.

PER CURIAM.

On further consideration of appellant's motion for reduction of bond, and of appellee's opposition thereto, and on consideration of the memorandum of District Court Judge David A. Pine, filed herein pursuant to the order of this court entered December 31, 1964, it is

ORDERED by the court that appellant's motion for reduction of bond is denied.

BAZELON, Chief Judge (dissenting).

Appellant was convicted of assault with attempt to commit rape. At sentencing, on June 19, 1964, appellant asked the court to admit him to bail pending appeal. This exchange took place:

"THE COURT: What was the previous bail? Do you have the file? Before it was set at $10,000. I see no reason for reducing it.

"MR. GARBER [Defense counsel]: He was unable to make it. In other words, the bail will be set at $10,-000?

"THE COURT: What is your idea about that, Mr. Blackwell [Prosecuting attorney]?

"MR. BLACKWELL: If Your Honor please, as I have indicated at the beginning, I—

"THE COURT: Now, if you do not know about it, I can wait for somebody—

"MR. BLACKWELL: I don't know about it, Your Honor. However, I agree with Your Honor that if the bond is a certain bond, after conviction and sentence, I don't know of any reason why it should be lowered.

"THE COURT: I think I will leave it at $10,000 then."

Not being able to provide bond in the amount set, appellant moved for reduc-

tion of bond in this court on December 5, 1964. We requested the District Court to "advise [this court] as to the considerations and reasons which led the District Court, (1) to seem to find that appellant was a fit subject to be released on bail pending appeal and (2) notwithstanding to set bail in the amount of $10,000 in order to 'insure the presence of the defendant,' Rule 46(c), Fed.R. Crim.P., when it appeared from the record that appellant was unable to furnish bail in that amount."

The court replied to our request, in pertinent part:

"Appellant is now 23, has been in and out of correctional institutions since he was 12. He has a history of sexual misconduct involving violence. On a prior occasion he was charged with the commission of the offense of having carnal knowledge of a female under 16 years of age (§ 22–2801, D.C.Code, 1951 ed.). Although from the papers he appears to have committed this offense and with force and violence, he was permitted to plead guilty to assault with intent to commit carnal knowledge and sentenced under the Youth Corrections Act. He apparently received no benefit from the procedures imposed under that Act. Indeed he became a serious disciplinary problem on account of sexual acts while incarcerated.

"In view of this history of sexual misconduct and the serious nature of the crime of which he was convicted, it was my judgment that appellant was not a proper subject for enlargement on bail pending appeal and that the public interest dictated that his motion for such bail be denied. However, the recent trend of judicial decisions has been toward liberalization of allowance of bail pending appeal and some members of the United States Court of Appeals for the District of Columbia have expressed the view that with the exception of certain capital cases, enlargement on bail pending appeal should be the rule. Because of this trend and these expressions, this court yielded to that view, and allowed bail, fixing the amount at $10,000.

"* * * So far as appellant's financial ability to give bail in the amount fixed is concerned, I assume that he is an indigent because he filed an oath setting forth his indigency. It does not always follow, however, that such indigency results in a failure to give bond, as the records of this court will show. But, be that as it may, his apparent inability to furnish bail in the *amount* fixed, is not the sole criterion, but * * * there are three other criteria set forth in Rule 46(c) to be weighed in fixing the *amount*. Weighing them, it was my judgment that the amount fixed was reasonable and proper and was necessary to insure appellant's presence if and when required, and that any amount less would be inadequate."

The "three other" criteria to which the court refers are (1) "The nature and circumstances of the offense charged, [(2)] the weight of the evidence against [the defendant] * * * and [(3)] the character of the defendant." [1] High monetary bail is not justified simply because the defendant's character is "bad" or because the evidence is heavily against him. It is justified only if the defendant's character reveals a propensity to flee, or if the evidence is so strong against him that he would be thus induced to flee.[2] And because release on bail pending appeal is "heavily favored," [3] there is no automatic presumption

---

1. Rule 46(c), Fed.R.Crim.P.

2. See, e.g., *A Study of the Administration of Bail in New York City*, 106 U. Pa.L.Rev. 693, 704–06 (1958).

3. Bandy v. United States, 81 S.Ct. 197, 198, 5 L.Ed.2d 218 (1960) (Mr. Justice Douglas as Circuit Judge). See Leigh v. United States, 82 S.Ct. 994, 996, 8 L. Ed.2d 269 (1962) (Chief Justice Warren

that "bad character" or strong evidence of guilt will induce flight. Each case requires individual determination. "Since the function of bail is limited, the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of *that* defendant." Stack v. Boyle, 342 U.S. 1, 5, 72 S.Ct. 1, 4, 96 L.Ed. 3, (1951) (emphasis supplied).[4]

There is little information on the record before us to establish that appellant is likely to flee if released on bail. He has considerable family ties in the District of Columbia and has lived here since 1950. The District Court gives no factual basis for its apparent conclusion that appellant is likely to flee, beyond stating that the evidence established guilt "beyond a reasonable doubt" and that appellant had previously been imprisoned for a similar offense. The Government's brief in this court states that appellant was a "fugitive * * * for four months in 1960–61." The record before us does not support this statement. The Government's brief gives no details of appellant's alleged fugitivity, and an investigation report by the District of Columbia Bail Project indicates only that "appellant has previously been admitted to bail in 1959 in the sum of $500 * * * on charges of assault and carrying a deadly weapon. There is no indication from the records that bond was forfeited."

But, beyond the inadequacy of the factual basis for the court's apparent determination that appellant was likely to flee if released, there is a more serious lack of information. Appellant could furnish the required bond, if at all, only through a professional bondsman. The trial court's failure to inquire into the conditions on which a bondsman would provide bond casts doubt on whether bail was fixed "upon standards relevant to the purpose of assuring the presence of that [appellant]." Stack v. Boyle, *supra.*

The court should have determined, for example, whether a bondsman would be willing to furnish appellant $10,000 bond without requiring any collateral.[5] If no collateral were required, then the threat of forfeiture would be less likely to deter appellant's flight than if he had a personal stake in forfeiture. Because the court did not inquire into this question, it must be assumed that the amount of bond was set, not to deter appellant's flight through threat of personal forfeiture, but only to give the bondsman an incentive to pursue appellant if he flees. It is, however, questionable whether $10,000 forfeiture is the lowest sum for that purpose. Moreover, the court made no inquiry regarding bondsmen's practices in this regard. The court should have determined whether the bondsman would rely on his own resources, or the police, in pursuing appellant.[6] If he relied on police, then financial bond would serve no purpose in deterring appellant from flight.[7] With-

as Circuit Justice for the District of Columbia Circuit) ("[B]ail [pending appeal] should ordinarily be granted * * * ."); Ward v. United States, 76 S.Ct. 1063, 1 L.Ed.2d 25 (1956) (Mr. Justice Frankfurter as Circuit Justice); Christoffel v. United States, 89 U.S.App. D.C. 341, 196 F.2d 560 (1951).

4. See Heikkinen v. United States, 208 F. 2d 738, 742 (7th Cir. 1953), "[E]very accused person is entitled to a hearing at which evidence relevant to his individual case is considered to determine the amount of bail necessary to assure his presence for trial. We construe this to require, on request, a factual determination by the court fixing bail which will

support the need for the amount of bail fixed."

5. "Washington, D.C. bondsmen ordinarily do not require collateral, but decide on a case by case basis." Freed & Wald, BAIL IN THE UNITED STATES: 1964 (A Report to the National Conference on Bail and Criminal Justice) 26.

6. Compare Report of the Committee on the Administration of Bail of the Junior Bar Section of the Bar Association of the District of Columbia, *The Bail System of the District of Columbia, Part II,* "Interviews with Bondsmen." (1963).

7. See Pannell v. United States, 115 U.S. App.D.C. 379, 380, 320 F.2d 698, 699 (1963) (concurring opinion).

out the foregoing inquiry the court could not reasonably conclude that $10,000 bond was necessary, or adequate, to "insure the presence" of appellant.[8]

Inquiry might have revealed that no bondsman would be willing to provide bond in any amount,[9] or that the bondsman would require collateral which was not available to appellant. In that event, bond in any amount would in effect constitute a denial of bail pending appeal. It may be that the District Court intended to deny bail because there was no adequate assurance of appellant's presence—either by way of financial assurances,[10] or ties in the community, or such devices as release subject to supervision of the United States Probation Office.[11] If so, it should have specified the reason. To deny the reality of bail while maintaining the fiction, perverts and distorts the administration of bail.

It would appear from the District Court's reply to our inquiry that bond was set high enough to deny release pending appeal because the court thought appellant's release would endanger the community. The court said: "[A]pellant was not a proper subject for enlargement on bail pending appeal and * * * the public interest dictated that his motion for such bail be denied." Appellant had a "history of sexual misconduct involving violence" and was also convicted of an assault with intent to rape which allegedly occurred only one month after he had been released on parole from imprisonment for a previous conviction on a similar charge. Although danger to the community is not a consideration for denying bail pending trial in non-capital cases,[12] it may be a consideration for denying bail pending appeal.[13] I submit, however, that it is not a proper consideration in setting the *amount* of bail. Setting high bail to deny release "discriminate[s] between the dangerous rich and the dangerous poor"[14] and masks the difficult problems of predicting future behavior which

---

8. In its response to our request, the District Court does not justify setting $10,-000 bond on one ground apparently relied upon when bond was set—that pretrial bond had been $10,000 and that there was no reason to reduce it. But there was no showing that the judicial officer who set pretrial bond had made appropriate inquiry regarding the relevance of that amount to insuring appellant's presence. Compare Timmons v. United States, 120 U.S.App.D.C. —, 343 F.2d 310, decided Jan. 28, 1965 (concurring opinion).

9. See Report, op.cit. *supra*, note 6, at p. 13; Freed & Wald, op.cit. *supra*, note 5, at p. 33.

10. "[T]he likelihood that bail within tolerable limits will not insure [the presence of the defendant] justifies denial of bail," Ward v. United States, 76 S.Ct. 1063, 1066, 1 L.Ed.2d 25 (1956) (Mr. Justice Frankfurter as Circuit Justice). See Blassingame v. United States, 242 F.2d 313 (9th Cir. 1957); United States v. Wilson, 257 F.2d 796 (2d Cir. 1958); Carbo v. United States, 302 F.2d 456 (9th Cir. 1962); United States v. Galante, 308 F.2d 63 (2d Cir. 1962).

11. See Freed & Wald, op.cit. *supra* note 5, at p. 66 *et seq.* Cf. Alston v. United States, No. 18750, per curiam order, dated Dec. 28, 1964 (dissenting opinion).

12. Rule 46(a) (1) provides: "A person arrested for an offense not punishable by death *shall* be admitted to bail." (Emphasis supplied.) Compare Williamson v. United States, 184 F.2d 280, 281 n. 4 (2d Cir. 1950) (Mr. Justice Jackson as Circuit Justice).

13. Rule 33(f), General Rules of the United States Court of Appeals for the District of Columbia Circuit provides: "In addition to the question whether the appeal is frivolous, or taken for delay, the following factors, among others, may be considered by the court in determining whether bail [pending appeal] should be allowed: (1) whether the safety of the community would be jeopardized; and (2) whether there is likelihood of appellant fleeing or going into hiding." See also Yanish v. Barber, 73 S.Ct. 1105, 97 L.Ed. 1637 (1953) (Mr. Justice Douglas as Circuit Justice); Carbo v. United States, 82 S.Ct. 662, 7 L.Ed.2d 769 (1962), (Mr. Justice Douglas as Circuit Justice); Rhodes v. United States, 275 F.2d 78 (4th Cir. 1960).

14. Freed & Wald, op. cit. *supra*, note 5, at p. 54.

is, in itself, "fraught with danger of excesses and injustice * * *."[15]

Familiar principles should make courts reluctant to deny bail pending appeal on the ground that release would endanger the community. And denial must be supported by a scrupulous inquiry into appellant's past history and all other relevant circumstances. No such inquiry is revealed by the record here. I would not, however, remand the case for further inquiry at this time since the appeal is scheduled to be heard very shortly and the circumstances affecting the issue of bail may be mooted or altered.

---

15. Williamson v. United States, 184 F. 2d 280, 282 (2d Cir. 1950) (Mr. Justice Jackson as Circuit Justice).