UNITED STATES of America,
Appellee,

v.

Harold WRIGHT, Appellant.

No. 73-1916.

United States Court of Appeals,
Fourth Circuit.

Argued Aug. 16, 1973.

Decided Sept. 7, 1973.

David B. Javits, Miami, Fla., for appellant.

Michael E. Marr, Asst. U. S. Atty., for appellee.

Before WINTER, FIELD and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

Contending that bail set in the amount of $250,000 was excessive,[1] and not in accord with the Bail Reform Act, the defendant, Harold Wright, appeals the denial of his motion for reduction of bail. We affirm.

Wright was arrested on July 3, 1973 and charged with importing and possession with intent to distribute approximately sixty-six pounds of cocaine, a controlled narcotic substance.[2] Following the arrest, the district judge, sitting in lieu of a federal magistrate, set bond in the amount of $250,000 cash, or with collateral. A grand jury, on July 10, 1973, indicted the defendant on four counts.[3] Wright then filed a petition for bond reduction, which was heard on July 12, 1973. The district court denied the motion to reduce bond and this ap-

1. The Eighth Amendment provides, in relevant part: "Excessive bail shall not be required. . . ."

2. Cocaine is a Controlled Schedule II substance as defined in 21 U.S.C. § 812 (1972); its importation is prohibited by 21 U.S.C. §§ 952, 963 (1972).

3. The defendant was charged with importation of cocaine in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 18 U.S.C. § 2; possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); attempted importation of cocaine in violation of 21 U.S.C. §§ 846, 952, 960(a)(1) and 18 U.S.C. § 2; and attempt to possess with intent to distribute in violation of 21 U.S.C. §§ 846, 841(a)(1) and 18 U.S.C. § 2.

peal was taken pursuant to Rule 9(a) of the Federal Rules of Appellate Procedure.[4]

The scope of our inquiry is delineated by provisions of the Bail Reform Act of 1966. Accordingly, a denial of a motion to amend an order imposing conditions of release "shall be affirmed if it is supported by the proceedings below." 18 U.S.C. § 3147(b). Since we find adequate support for the district judge's action in the proceedings below, we find no merit in Wright's appeal and thus affirm the decision of the district court.

To provide the setting for the district court's actions and Wright's appeal, it is appropriate to recite the facts as shown by the record and oral argument.

Federal agents received advance notice from government informers that a shipment of cocaine, hidden in falsebottomed cartons of plantains, was to be smuggled into the United States through the port of Baltimore aboard the motor vessel Ciudad de Bogota. The agents also learned that the plantains, in approximately 500 cartons, were consigned to "Bronx Bananas, New York City, New York." This information was confirmed on July 2, 1973 when port authorities disclosed that a shipment of 450 cartons of plantains aboard the Ciudad de Bogota and consigned to Bronx Bananas was due to arrive the following day.

On the morning of July 3, 1973, John S. Conner, a Baltimore Customs broker, received a letter from the Bronx Terminal Banana Company signed by Harold Wright, as manager of the sales department, authorizing J. S. Conner to clear Wright's shipment through Customs. On that same morning, the defendant entered Pier I in Baltimore, identified himself, and asked permission to load the plantains. He was permitted to load the shipment but instructed not to leave the pier area until he had been cleared by customs. Wright then telephoned J. S. Conner regarding the necessary clearance. At this point, Customs agents discovered the cocaine concealed in the cartons of plantains and Wright was subsequently placed under arrest.

The primary purpose of bail is to insure the presence of the accused at his trial. Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951). In setting bail, courts should first consider release on personal recognizance or upon execution of an unsecured appearance bond of a specified amount, among other restrictions, before requiring cash bail or collateral. See 18 U.S.C. § 3146(a). But, should a judge determine that a release on recognizance, or unsecured bond, or on other less demanding restrictions, will not reasonably assure the appearance of the accused, he is obligated to impose a condition or combination of conditions of release which in his judgment gives that assurance. Thus, the fixing of the amount of bail is peculiarly a matter of discretion with the trial court. United States v. Radford, 361 F.2d 777 (4th Cir.), cert. den., 385 U.S. 877, 87 S.Ct. 158, 17 L.Ed.2d 105 (1966); Kaufman v. United States, 325 F.2d 305 (9th Cir. 1963).

In determining which conditions of release will reasonably assure appearance, the judicial officer must consider the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, and his record of appearance at past court proceedings. 18 U.S.C. § 3146(b).

We are of opinion the present conditions of release were made by the

---

4. Rule 9(a) of the Federal Rules of Appellate Procedure provides:

"An appeal authorized by law from an order refusing or imposing conditions of release shall be determined promptly. Upon entry of an order refusing or imposing conditions of release, the district court shall state in writing the reasons for the action taken. The appeal shall be heard without the necessity of briefs after reasonable notice to the appellee upon such papers, affidavits, and portions of the record as the parties shall present. The court of appeals or a judge thereof may order the release of the appellant pending the appeal."

district judge after analysis of these factors. Weighing heavily against personal recognizance or a nominal bond is the seriousness of the nature and circumstances of the offenses charged. In this connection, it also should be noted that the capture of sixty-six pounds of cocaine with a street value exceeding $7,500,000 is represented by the United States to be the largest shipment of cocaine ever seized in the Harbor of Baltimore.

A number of additional factors increase the risk of flight in this case. There appears to be a considerable amount of evidence against the accused. Wright was arrested in the act of importing the cocaine into the United States, the substance of the offense charged. He was in possession of the drug when apprehended. Moreover, the existence of the letter of instructions to J. S. Conner signed by the defendant as manager of the sales department tends to refute much of Wright's assertion that he is an unknowing courier for third parties. The district judge was aware that the defendant lives not in Baltimore, but in Miami, Florida, a point from which escape from the United States is a relatively simple matter. Indeed, it was brought out that Wright had traveled to Colombia in South America as recently as March of 1973. In the hearing below, Wright gave vague and unclear responses to questions regarding his sources of income and employment before and at the time of his arrest. He related a highly implausible story that he had obtained a passport because his wife wanted to go to Nassau (passports are not required to go to Nassau), and said he went to South America to "deliver a message," not in writing—"just my word."

Favoring Wright are his family ties —he is married and has three children —and his lack of a criminal record. The district judge, in exercising his discretion, however, determined that these facts did not negate the requirement of a substantial bond.[5]

The defendant urges his impecunious financial status as an essential criterion of excessiveness which the Eighth Amendment forbids. We point out, however, that the governing criterion to test the excessiveness of bail is not as the defendant suggests, but whether bail is set at a figure higher than an amount reasonably calculated to insure that the accused will stand trial. United States v. Radford, supra; Forest v. United States, 203 F.2d 83 (8th Cir. 1953).

We are accordingly of opinion the district judge did not abuse his discretion, and the decision of the district court is

Affirmed.

WINTER, Circuit Judge (dissenting):

While I do not differ in substantial degree from the majority with regard to the rules of law governing the decision of this case, I would reach a different result on the facts. Of course, I would not release defendant on his own recognizance, or on a nominal bond; even defendant has not made that request. But I think that defendant's presence at trial would be reasonably assured if he were released on a bond in the range of $25,000 to $50,000, with corporate surety, on conditions that he (a) remain within the Southern District of Florida, except for necessary court appearances in the District of Maryland, (b) periodically verify his presence to a probation officer within the Southern District of Florida, and (c) surrender his passport. Certainly, I think that bail of $250,000 under the facts of this case, is so excessive as to violate the Eighth Amendment and to make a shambles of the Bail Reform Act. For that reason, I would re-

---

5. It was pointed out in oral argument that the fugitive rate in Region 4, which encompasses nearly every state in the Fourth Circuit, is the highest in the nation. That would appear to be a factor which should not be disregarded. Moreover, large bonds are apparently often required of those accused of violating the narcotics laws. For example, bonds of $250,000 and even $400,000 have been set in this circuit and met by defendants.

 

verse and remand the case with instructions to the district court.

Defendant is married, lives with and supports his wife and three children in an apartment in Miami, Florida. Defendant, who is 30, has lived there all of his life. His occupation is that of an over-the-road truck driver, and he earns an average of $200 per week. He usually trucks loads of fruit and ladies' apparel between Miami and New York in trucks which he arranges to rent or which are furnished by the shipper. His only visible assets are an equity in an automobile and small savings accounts in his name and those of his children. He has no record of prior convictions or even of prior arrests.

Defendant is accused of serious crimes and the amount of cocaine seized when defendant was apprehended had substantial value. Defendant's name appeared on written instructions to the customs' broker authorizing the broker to effect customs clearance of the bananas in which the cocaine was concealed. Defendant's counsel claims that he possesses competent evidence to establish that the purported signature is a forgery. But, even if the claim of forgery is rejected, it taxes my credulity to think that defendant's participation in the illegal enterprise, if established by competent proof at trial, was more than that of a simple courier. Whether he was an unknowing courier may be litigated at trial; but even if he possessed knowledge of what he was to carry, there is utterly lacking any evidence, in the nature of defendant's life style, his known possessions, the circumstances of his arrest, or his suspected participation in the crimes, even to generate a strong suspicion that he was a principal in the illegal importation of cocaine. He, thus, cannot be supposed to have the same incentive and the same resources for flight of one who was a principal in an illegal importation of this magnitude. His state of residence should not be a factor requiring bail in a greater amount than if he lived elsewhere. National and international means of transportation are available to anyone in the United States, irrespective of his residence.

To repeat, at best (or at worst), I see defendant as a mere courier, one who has substantial family ties, who has lived a life of considerable stability and who has no previous criminal record. I see no more than the ordinary risks of flight that can be minimized by reasonable bail and reasonable restrictions. To my mind, it follows that bail of $250,000 was excessive, especially in view of defendant's manifest inability to raise that amount.